# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS
## Washington, D.C.

## UNITED STATES

### v.

### Jason L. FAY
### Fireman (E-3), U.S. Coast Guard

### CGCMS 24250

### Docket No. 1189

### 3 March 2004

Special Court-Martial convened by Commanding Officer, Integrated Support Command Seattle. Tried at Thirteenth Coast Guard District, Seattle, WA, on 25 February 2003.

| | |
|---|---|
| Military Judge: | CDR Michael J. Lodge, USCG |
| Trial Counsel: | LT Michael R. Vaughn, USCG |
| Defense Counsel: | LCDR Ryan J. McBrayer, JAGC, USN |
| Appellate Defense Counsel: | LCDR Nancy J. Truax, USCG |
| Appellate Government Counsel: | LCDR John S. Luce Jr., USCG |

## BEFORE
## PANEL THREE
## BAUM, KANTOR, & McCLELLAND
Appellate Military Judges

BAUM, Chief Judge:

Appellant was tried by special court-martial, military judge alone. Pursuant to his pleas of guilty, entered in accordance with a pretrial agreement, Appellant was convicted of the following offenses: one specification of wrongfully distributing MDA and MDMA, the Schedule I controlled substances commonly known as "Ecstasy," and MET, a Schedule II controlled substance; and one specification of wrongful possession of marijuana, all in violation of Article 112a, Uniform Code of Military Justice (UCMJ); and one specification of assault, in violation of Article 128, UCMJ.

Appellant was sentenced to a bad-conduct discharge, confinement for 135 days, and reduction to E-1. The Convening Authority approved the sentence, but, in accordance with the

pretrial agreement, deferred forfeitures arising by operation of Article 58b, UCMJ, from the date of their effect until the date of action on the sentence, and, thereafter, waived such forfeitures for six months from the date of action, with payment of all waived forfeitures to Appellant's dependent son.  Appellant was also credited with twelve days of pretrial confinement pursuant to *United States v. Allen*, 17 M.J. 126 (C.M.A. 1984).

Before this Court, Appellant has assigned two errors: (1) that the military judge committed plain error by admitting and considering improper aggravation testimony from the Integrated Support Command's Port Services Branch Chief, and (2) that Appellant was subjected to illegal pretrial punishment under Article 13, UCMJ by his assignment to an "artificial" Branch created specifically for, and populated only by, people with "discipline problems."

# I

## Asserted Improper Evidence in Aggravation

At the sentencing stage of trial, the prosecution called as a witness the command's Port Services Branch Chief, who testified that Appellant was assigned to the Port Services Branch for approximately six months.  Without objection, that officer stated that the egregious nature of Appellant's offenses had a negative impact on the Port Services mission by causing the command to devote upwards of thirty to forty man-hours away from the mission, working on a better way of managing people to prevent similar acts in the future. The witness also stated that Appellant had an adverse impact on the efficiency of Port Services by causing lowered morale among hardworking permanently assigned personnel, who expressed concern about being lumped together in the branch with disciplinary-problem personnel.  Additionally, the witness observed that the need for close supervision of Appellant to ensure that he was doing his job impacted discipline.  According to the witness, up to five musters a day were sometimes required to account for Appellant, and more frequent than normal inspections of his room for cleanliness and maintenance problems were necessary.  The witness also stated that Appellant affected discipline as an instigator of a ring of drug users, providing drugs to many of them.  Defense counsel successfully objected to this last statement, causing the military judge to strike that

portion of the witness's testimony. The unchallenged prior testimony was admitted in evidence by the judge, however, and Appellant asserts now that the judge erred in that regard.

Appellant contends that the evidence admitted by the judge did not show any specific impact caused by or resulting from Appellant's actions. He submits that, as a result, the evidence did not meet the test of Rule for Courts-Martial 1001(b)(4), Manual for Courts-Martial, United States, (2002 ed.), which allows at sentencing "evidence of significant adverse impact on the mission, discipline, or efficiency of the command directly and immediately resulting from the accused's offense." The error in admitting this evidence, according to Appellant, materially prejudiced him by causing the judge to impose a sentence that likely would have been different without the evidence. Appellant acknowledges that his failure to object at trial should cause this Court to review solely for plain error, that is, error which is clear or obvious and materially prejudicial to the Appellant's substantial rights. *United States v. Powell*, 49 M.J. 460 (1998). Applying that test, we find that the testimony about the need for close supervision, musters, and inspections based on Appellant's actions while restricted is the only evidence that might be clear or obvious error. However, neither that evidence nor the remainder of the witness's testimony resulted in material prejudice to Appellant. In our view, this witness's testimony had little, if any, adverse impact on the sentence imposed by the judge. That sentence was fully supported by Appellant's offenses standing alone. We are convinced beyond a reasonable doubt that the sentence would have been the same had the trial counsel not called the Port Services Branch Chief as a witness. Accordingly, assignment one is rejected.

## II

### Asserted Unlawful Pretrial Punishment

In his second assignment of error, Appellant contends that his placement in an "artificial" MAA Force within the Port Services Branch, made up of only personnel with discipline problems, caused him to suffer illegal pretrial punishment prohibited by Article 13, UCMJ. The Port Services Branch Chief testified that he created this separate group of temporarily assigned personnel in an effort to improve the morale of the people permanently assigned, whom he characterized as hardworking. Apparently, the permanent workforce believed their reputation at the command was adversely affected by being lumped in with personnel facing discipline.

Citing *United States v. Starr*, 53 M.J. 380 (2000), Appellant argues that placing him in an "artificial" unit created for the purpose of segregating him and others with like problems from those personnel characterized as "hardworking" had a stigmatizing effect on him, without a legitimate, non-punitive government purpose.

In *United States v. Starr*, the Court of Appeals for the Armed Forces was faced with a similar assertion of pretrial punishment in violation of Article 13, UCMJ, based on the assignment of the accused in that case to a special unit within his security squadron composed solely of personnel who could not, or were not permitted to, perform security forces duties. *Starr*, 53 M.J. at 381. The question of illegal pretrial punishment was raised by a motion at trial that the military judge accord two-for-one administrative pretrial credit for the period of the accused's assignment to the special unit within the security squadron. *Id.* at 381. The military judge denied the request, finding, among other things, that the purpose of the special unit was to provide productive work for those who could not carry weapons and that personnel in that unit performed necessary work in support of the base mission. *Id.* at 381. Based on these findings, the trial judge also found that the purpose in placing the accused in the special unit was not punishment, but rather to ensure that he would be productively utilized pending investigation into alleged misconduct, which furthered a legitimate, non-punitive government purpose. *Id.* at 381. The Court of Appeals for the Armed Forces held that the trial judge set forth the correct test: whether there was an intent to punish or stigmatize a person awaiting disciplinary action, and if not, whether the conditions were in furtherance of a legitimate, non-punitive government objective. *Id.* at 382.

Appellant contends that the intent in the case before this Court was to stigmatize the people assigned to the "artificial" MAA Force, rather than the stated purpose of improving the image of Port Services as a whole. Appellant submits that separating out people with discipline problems in order to de-stigmatize the rest of the branch "only serves to stigmatize those who have been segregated out." Moreover, according to Appellant, the creation of the special MAA Force and Appellant's assignment to it were not in furtherance of a legitimate, non-punitive government objective. Pretrial punishment was not asserted during Appellant's court-martial. It has been raised for the first time before this Court. Appellant notes that our higher court in

*United States v. Inong*, 58 M.J. 460 (2003) held that for future cases, failure to raise the issue of illegal pretrial punishment at trial waives that issue for purposes of appellate review, absent plain error. Since Appellant was tried before the decision in *Inong*, he submits that we should review his assertion of pretrial punishment without applying a plain error analysis. We agree, and, accordingly, will treat the issue as not waived by the failure to raise it earlier.

In so doing, we note the definite merit in having a trial judge make initial findings of fact. Nevertheless, despite the obvious advantage such findings provide, we discern enough in the record to draw conclusions as to the critical facts without the assistance of findings by the military judge. Based on the testimony of the Chief of the Port Services Branch, we are convinced that there was no intent to punish or stigmatize those assigned to the special MAA Force. Instead, we find that the Branch Chief's purpose was to raise morale within his Branch and thereby increase productivity and efficiency in fulfilling the mission of Port Services, which, according to his testimony, was to provide logistics to the cutters, to maintain and manage the bachelor enlisted quarters, to take care of the motor pool, and to assist with physical security of the base. Accordingly, we have determined that assignment of personnel with discipline problems to a specially created MAA Force within the Port Services Branch was in furtherance of a legitimate, non-punitive government objective. For these reasons, Appellant's second assignment of error is denied.

### Conclusion

We have reviewed the record in accordance with Article 66, UCMJ. Upon such review, the findings and sentence are determined to be correct in law and fact and, on the basis of the entire record, should be approved. Accordingly, the findings of guilty and the sentence as approved below are affirmed.

Judges KANTOR and McCLELLAND concur.



For the Court,

Roy Shannon Jr.
Clerk of the Court